UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DISCOVERY ENERGY LLC,

        Plaintiff,

   v.

EMANUELE MULÈ,

        Defendant.

Case No. 25-cv-1289-bhl

**ORDER DENYING PLAINTIFF'S REQUESTS FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

    Plaintiff Discovery Energy LLC, d/b/a/ Rehlko (Rehlko), alleges that Emmanual Mulè, a former Rehlko employee, improperly took information constituting trade secrets with him when he left Rehlko's employ to accept a job with one of its competitors, Generac Power Systems. (ECF No. 30 at 1–2.) Rehlko contends that Mulè's conduct violated Wisconsin's Uniform Trade Secrets Act (WUTSA), the Wisconsin Computer Crimes Act (WCCA), and breached his contractual obligations to Rehlko. (ECF No. 1-1 ¶52.) Rehlko initially filed suit and moved for various forms of injunctive relief in the Sheboygan County Circuit Court, and, on August 6, 2025, the state court granted Rehlko an *ex parte* temporary restraining order (TRO) against Mulè. (ECF Nos. 1-1 & 1-2.) On August 27, 2025, Mulè removed the case to this Court and moved to modify or dissolve the state court's TRO. (*See* ECF Nos. 1–11.) At a September 9, 2025, hearing, the Court concluded the record was sufficient to continue, with modifications, the state court TRO. (ECF Nos. 23 & 24.) The Court then scheduled and conducted an evidentiary hearing on September 19 and 22, 2025 to decide whether Rehlko was entitled to ongoing injunctive relief. (ECF Nos. 28 & 29.) After the hearing, Rehlko moved for a permanent injunction. (ECF No. 30.) Mulè opposes that motion and insists Rehlko has not described with particularity any actual trade secrets that would warrant injunctive relief. (ECF No. 36.)

    Based on the parties' briefing and the evidence presented, the Court will deny Rehlko's requests for both preliminary and permanent injunctive relief. The Court agrees with Mulè that

Rehlko has not carried its burden of showing that the information Mulè took is likely to constitute trade secrets. Moreover, Mulè has already been required to return the information he took from Rehlko under the existing TRO, and the record does not justify further or continued relief.

## BACKGROUND FACTS[1]

Rehlko is a Delaware limited liability company with its principal place of business in Kohler, Wisconsin. Rehlko manufactures products for industrial and home energy systems. These products include generators and automatic transfer switches that allow a system to switch from using power from a utility service to power generated by an emergency power system.

Mulè is a former Rehlko employee, who lives in Basking Ridge, New Jersey. While at Rhelko, Mulè's title was "sales manager engineered solutions," and he was assigned to a territory consisting of New York, New Jersey, and Pennsylvania. He primarily marketed Rehlko products to electrical engineers, so that those engineers would prepare designs and bids for contractors incorporating Rehlko products to be purchased from Rehlko distributors. Mulè did not sell directly to end users in this role. Mulè also testified that, before he left Rehlko, the executive management of Rehlko had made it clear that data centers would be a primary focus of Rehlko's business.

On May 9, 2025, Mulè left his employment with Rehlko. Three days later, he began working for Generac. Generac also manufactures products for industrial and home energy systems, including industrial generators and products needed to create backup power systems. At Generac, Mulè's title is senior director of data centers. He sells directly to end users, and his sales territory includes all of North America.

On multiple occasions before leaving Rehlko, Mulè took screen captures of documents that were available to him through Rehlko's "Salesforce" program and saved those documents to a USB drive. He also emailed documents to his personal email address. Both actions were contrary to Rehlko policy and, given the timing, raised understandable concerns among Rehlko executives when they were discovered. With the benefit of time and further information, Rehlko concedes many documents over which it was concerned are in fact publicly available and do not qualify as trade secrets.

---

[1] The Background Facts represent the Court's Findings of Fact for purposes of Federal Rule of Civil Procedure 52(a)(2). They are derived from admitted allegations in the parties' pleadings and the witness testimony and exhibits admitted at the evidentiary hearing.

**LEGAL STANDARD**

The Court has already extended and modified an existing TRO issued by the Sheboygan County Circuit Court. (ECF No. 23 at 2–4.) After doing so, as described above, the Court held a hearing to determine whether Rehlko is entitled to preliminary injunctive relief. (ECF Nos. 28 & 29.) In the interim, the TRO, as modified, has remained in place.

Whether Rehlko is entitled to continued or additional injunctive relief is governed by Federal Rule of Civil Procedure 65. "A preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (internal quotation marks and citations omitted); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right." (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008))). To obtain continued preliminary injunctive relief, Rehlko must show that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *See Winter*, 555 U.S. at 20. Permanent injunctive relief requires even more. The movant must show actual success on the merits, in addition to the other requirements for receiving a preliminary injunction. *Vaughan v. Walthall*, 968 F.3d 814, 824–25 (7th Cir. 2020). Because Rehlko has not shown that it is likely to succeed on the merits of its trade secrets claim[2], on which its request is based, the Court will deny any further injunctive relief and dissolve the existing temporary restraining order now in place.

**ANALYSIS**

**I. Because Rehlko Has Not Shown a Likelihood of Success on the Merits, its Request for Continued Preliminary Injunctive Relief is Denied.**

The Wisconsin Uniform Trade Secrets Act prohibits the misappropriation of trade secrets. Wis. Stat. §134.90. The Act defines trade secrets as:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique or process to which all of the following apply:

---

[2] Rehlko also raised claims under the Wisconsin Computer Crimes Act and a breach of contract theory in its initial complaint, (*see* ECF No. 1-1), but did not raise either of those arguments in its briefing or at the evidentiary hearing. Arguments that are underdeveloped, conclusory, or unsupported by law are waived. *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012). Rehlko has not developed these arguments and is therefore not entitled to injunctive relief on either of those legal theories.

(1) The information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(2) The information is the subject of efforts to maintain its secrecy that are reasonable under the circumstances.

Wis. Stat. §134.90(1)(c). In applying this statutory definition, courts are guided by a six-factor test outlined in the First Restatement of Torts. *Minuteman, Inc. v. Alexander*, 434 N.W.2d 773, 777–78 (Wis. 1989) (citing *Corroon & Black-Rutters & Roberts, Inc., v. Hosch*, 325 N.W.3d 883, 886 (Wis. 1982). The six factors include (1) the extent to which the information is known outside the plaintiff's business; (2) the extent to which it is known by employees and others involved in the plaintiff's business; (3) the extent of measures taken by the plaintiff to guard the secrecy of the information; (4) the value of the information to the plaintiff and plaintiff's competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *Id*. at 777.

Rehlko's trade secrets claim has evolved since it first filed suit. Rehlko now admits that many of the documents Mulè took when he left Rehlko's employment are not trade secrets. (ECF No. 30 at 5 n. 1.) It has not provided an updated list of the specific documents it believes are protected, however, and instead, points to materials based on where they appear in the record: "(1) the documents attached to the Complaint as Exhibits, (2) the screen shots located on the USB drive; and (3) the emails that Mulè forwarded to his personal email address." (*Id.* at 5.) Its post hearing brief focuses "on the Exhibits and screen shots," which it asserts are "more than sufficient" to grant injunctive relief. (*Id.*)

Given that it is the party seeking relief, Rehlko's lack of clarity does not help its cause. The Court has nevertheless identified five groups of materials that Rehlko relies upon for its trade secrets claim: (1) customer lists, (2) pricing information, (3) competitive analyses comparing competitors' products created by Rehlko employees, (4) video recordings of meetings, (5) and PowerPoint presentations. As explained below, Rehlko has not carried its burden of showing that any of these groups of information are likely to constitute protectable trade secrets and has, therefore, failed to show a likelihood of success sufficient to support any ongoing injunctive relief.

## A. Rehlko Has Not Shown Its Customer Lists Are Likely to Be Trade Secrets.

Rehlko insists that several documents taken by Mulè that include lists of Rehlko customers are trade secrets. Rehlko contends that these lists "contained information compiled in such a manner that made [them] proprietary to Rehlko." (ECF No. 30 at 6–7 (citing *Minuteman, Inc.*, 434 N.W.2d at 779; *Charles Schwab & Co. Inc. v. LaGrant*, 483 F. Supp. 3d 625, 629 (E.D. Wis. 2020).) It further argues that because the lists were "password protected, cannot be readily duplicated, and contain sensitive customer information in a highly-competitive industry[,]" the lists are trade secrets. (*Id.* at 7.)

There is no question that a customer list *can* be a trade secret under Wis. Stat. §134.90(1)(c). *See Minuteman,* 434 N.W.2d at 779. For example, where a business operates in an intensely purchaser-oriented market, in which competitors sell near identical products or services to a small, fixed group of purchasers, a list of those specialized customers can receive trade secret protection. *Id.* at 779 (citing *Steenhoven v. Coll. Life Ins. Co. of Am.*, 460 N.E.2d 973, 974 n.5 (Ind. Ct. App. 1984)). But in industries with a wide customer base, or for companies with a broad target market, a customer list is generally not a trade secret. *See Nalco Chem. Co. v. Hydro Techs., Inc.*, 984 F.2d 801, 802–04 (7th Cir. 1993) (chemical manufacturer's customer list is not a trade secret because the target market was broad, including schools, hospitals, industrial buildings, and water treatment plants); *Charles Schwab*, 483 F. Supp. 3d at 629–30 (contact information of wealthy potential investors is not a trade secret). Nevertheless, other factors can elevate a customer list to trade secret status. When a customer list is *combined* with other proprietary information that gives the list independent economic value, it can satisfy the requirements for trade secret treatment. For example, a customer list combined with information about each customer's unique specifications or needs can be a trade secret. *See Centrifugal Acquisition Corp., Inc. v. Moon*, 849 F. Supp. 2d 814, 835 (E.D. Wis. 2012) (holding battery terminal manufacturer's customer list that included designs for a "match plate" unique to each customer's battery is a trade secret). Similarly, a customer list that has specific information identifying which prospective customers are most likely to purchase a specific product can be a trade secret. *See Am. Fam. Mut. Ins. Co. v. Roth*, 485 F.3d 930, 933 (7th Cir. 2007) (insurance company's database that sorted customers by their suitability to buy insurance is a trade secret).

Rehlko has not shown that the customer lists at issue in this case rise to the level of trade secrets. Rather than showing something special about its market or some other key aspect about

the lists at issue that give them some specific independent economic value from not being known to Rehlko's competitors, Rehlko focuses on the improper method by which Mulè took the customer list. (ECF No. 30 at 3.) While the Court does not condone Mulè's taking of screen captures of this information and agrees that his conduct suggests he was trying to conceal his actions, his unsavory intentions do not transform the customer lists into trade secrets. Similarly, the testimony of Phillip Spearo, Rehlko's corporate representative and human resources employee, that Mulè did not work with any of the clients whose contact information was shown in the screen captures, does not carry the day. While this testimony also suggests that Mulè had an improper motive, that again does not support a trade secret finding. Finally, Rehlko's bald assertion that the lists "contained information compiled in such a manner that made those lists proprietary to Rehlko," (*Id.* at 6), is conclusory and self-serving and likewise does not make the lists trade secrets.

It was Rehlko's affirmative burden to establish that something about the customer lists rendered them trade secrets. But it has offered no credible evidence to satisfy that burden. Rehlko offered no evidence about its industry that would make the customer lists trade secrets. *See Minuteman,* 434 N.W.2d at 779. Indeed, the screen captures at issue, along with Rehlko's own description of its business, suggest that it markets its products to a wide range of customers, making the customer lists themselves, without more, unlikely to constitute trade secrets. *Nalco Chem. Co.,* 984 F.2d at 802. Nor has Rehlko offered evidence that the customer lists Mulè screen captured include proprietary information about any customer's needs, *see Centrifugal Acquisition Corp., Inc.,* 849 F. Supp. 2d at 835, or that the entries were sorted, coded, or catalogued in some way that makes them more useful to Rehlko, *see Am. Fam. Mut. Ins. Co.,* 485 F.3d at 933. If there is anything special about these lists that might elevate them to the level of a trade secret, Rehlko has not identified it. In these circumstances, the Court cannot find that any of the Rehlko customer lists are likely to be trade secrets.

### B. Rehlko Has Not Shown Its Pricing Lists Are Likely to Be Trade Secrets.

Rehlko's claim that Mulè took pricing materials that include trade secrets fails for similar reasons. At the hearing, Rehlko showed that Mulè took screen captures of pricing documents and price lists that were used by Rehlko distributors and not generally available to customers. Spearo testified that the exhibits contained information unique to Rehlko, that the pricing documents had independent economic value, and that Rehlko took steps to maintain its secrecy.

Like the customer lists discussed above, internal, confidential pricing lists or policies can sometimes be protected as trade secrets. But to be protected as a trade secret, the law requires that the information have "independent economic value" that is derived by virtue of the information "not being generally known to, and not being readily ascertainable by proper means," by individuals who could make use of it. *See* Wis. Stat. §134.90(1)(c). Whether a company's internal price lists or pricing policies can provide independent economic value because the information is kept secret is, of course, fact dependent. Information that is commonly known or easily discoverable within an industry, for example, is not a trade secret. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) (citing the Restatement of Torts). By extension, an internal cost or pricing practice that is simply consistent and well known across an industry is also not a trade secret. *See IVS Hydro, Inc. v. Robinson*, 93 F. App'x 521, 527–28 (4th Cir. 2004).[3]

Neither the Wisconsin Supreme Court nor the Seventh Circuit have directly addressed when confidential internal pricing information is a trade secret, but both the Fourth and Tenth Circuits have addressed this issue and provide guidance on the evidence required to make pricing information a trade secret. *See id.* at 528; *Double Eagle Alloys, Inc. v. Hooper*, 134 F.4th 1078 (10th Cir. 2025). Both Courts of Appeals concluded that a plaintiff seeking injunctive relief based on pricing materials must provide detail allowing the court to assess whether the pricing documents or the model they employ is unique to the plaintiff, that the information has some importance, that the plaintiff employed efforts to build the information or model, and that the information or model offers some competitive advantage.

In *IVS Hydro, Inc.*, the Fourth Circuit held that an industrial cleaning services provider had not shown that its pricing information was a trade secret. 93 Fed. App'x. at 526–28. The Court

---

[3] While this misappropriation of trade secrets claim was decided under the West Virginia Uniform Trade Secrets Act, the relevant definition for trade secrets is the same as the WUTSA, and the same six factors are used to guide the analysis. *See IVS Hydro, Inc.*, 93 F. App'x at 526–27 (citing W. Va. Code Ann. §§47–22–1(d)(1), (2); *State ex rel. Johnson v. Tsapis*, 419 S.E.2d 1, 3 (W. Va. 1992)).

of Appeals emphasized there was no evidence in the record showing the plaintiff had expended significant resources developing the pricing model or that there was anything unique about its pricing structure. *Id.* at 527–28. The Court also noted that the case involved salespeople who changed employment between competitors so frequently that the typical rates for industrial cleaning were common knowledge in the local marketplace. *Id.* at 523, 528.

Similarly, in *Double Eagle Alloys, Inc.*, the Tenth Circuit affirmed a district court decision granting summary judgment to a defendant on a trade secrets claim because the plaintiff had failed to proffer enough evidence to show its pricing model was a trade secret.[4] 134 F.4th at 1095. There, the plaintiff offered short descriptions of the pricing model in affidavits, a spreadsheet with prices for certain parts, and depositions from two employees describing how the pricing model worked. *Id.* at 1094–95. But the Tenth Circuit held that evidence was not enough to allow the district court to assess the amount of time, effort, or expense required to create the pricing model, or the competitive advantage the pricing model offered. *Id.* at 1095.

Like the plaintiffs in *IVS Hydro, Inc.*, and *Double Eagle Alloys, Inc.*, Rehlko has not shown its pricing documents are likely to be trade secrets. The record confirms that some of the documents Mulè took include pricing information about various Rehlko products. (ECF Nos. 9 at 126–37; 10 at 2–7.) But there is almost no evidence that any of the price lists are unique or provide special value in a way that made them trade secrets. The party seeking trade secret protection for its pricing list must set out the factual basis that would entitle it to protection, and that showing requires demonstrating the price model is in some way unique, describing the effort that went into creating it, and explaining why it offers a competitive advantage. *See IVS Hydro, Inc.*, 93 Fed. App'x. at 526–28; *Double Eagle Alloys, Inc.*, 134 F.4th at 1094–95. Rehlko has not provided information that would allow the Court to assess those factors. The record shows that some of the price lists were made by distributors, undercutting the claim they are unique to Rehlko. *See IVS Hydro, Inc.*, 93 F. App'x at 528. Rehlko does not establish how the distributors used the price list, or how any of the price lists were made. *Id.* at 527–28. Rehlko also fails to provide information showing that these price lists give Rehlko some sort of competitive advantage. *See Double Eagle Alloys, Inc.*, 134 F.4th at 1095. Rehlko does not describe how a list of costs used by a distributor would create a competitive advantage or independent economic value for Rehlko.

---

[4] The plaintiff brought claims under both the DTSA and Oklahoma Uniform Trade Secrets Act; the same definition of trade secret applies under both statutes. *Id.* at 1088.

Rehlko has not carried its burden and has not established facts showing that its pricing lists are likely to be trade secrets.

Moreover, Rehlko's reliance on these price lists for its trade secrets claim is also undermined by its failure to establish that the lists are still relevant to its current business. Rehlko offered testimony confirming the dates of only some of the price lists, and even those with dates appear to be more than five years old. As the party arguing for trade secret protection, Rehlko had to establish that these price lists have some current relevance, assuming they ever were trade secrets. Without evidence providing this necessary context and detail, Rehlko has not established that these pricing documents should be protected as trade secrets.

### C. Rehlko Has Not Shown That Its Comparative Analyses of Competitors' Products Are Likely to be Trade Secrets.

Rehlko next argues that various documents comparing its products with items manufactured and sold by Generac and other competitors are trade secrets. The record confirms that Mulè took three competitive analyses created by Rehlko employees showing various competitors' generator system products and the relative strengths of the competitors' systems against Rehlko's products. (ECF Nos. 30 at 4; 9 at 16–17, 108–21.) One competitive analysis only addresses Generac's product and was made using information Generac made available on its own website. (ECF No. 9 at 16–17.) The next competitive analysis compares Rehlko products with a range of competitors' products. (ECF No. 9 at 114–21.) The third is a two-page document describing a competitors' sales strategy pertaining to its generator. (ECF No. 9 at 123–24.)

Rehlko insists that these product comparison documents are highly confidential. (ECF No. 30 at 4.) But confidentiality is not enough; Rehlko must put forth evidence to show these comparisons are likely to be trade secrets. The issue is twofold; whether information about Rehlko's competitors' products can be a trade secret of *Rehlko*, and whether there is some information about Rehlko's products contained in the comparative analyses that is itself a trade secret. Rehlko cannot claim protection for its competitors' trade secrets and has not identified any of its own information that should be protected as a trade secret.

Information that is generally known or easily discoverable within an industry generally cannot receive protection as a trade secret. *Ruckelshaus*, 467 U.S. at 1002 (citing the Restatement of Torts). It perhaps goes without saying that a plaintiff will have an uphill battle claiming that a competitor's information that the plaintiff itself has been able to unearth constitutes its own trade

secret. By definition, the competitor was unable to keep the information secret and the plaintiff only knows the information because it was ascertainable, presumably through proper means. *See UTStarcom, Inc. v. Starent Networks, Corp.*, 675 F. Supp. 2d 854, 867–68 (N.D. Ill. 2009) ("It is unclear why specifications of 3Com's competition constitute a 3Com trade secret, as they are obviously known to outside parties and cannot be kept secret by [plaintiff].")

If a company patents or sells a product to the public, it cannot then claim as a trade secret information that is readily ascertainable from observation of the product or consultation of the patent. *Life Spine, Inc. v. Aegis Spine, Inc.* 8 F.4th 531, 540 (7th Cir. 2021) (citing *BondPro Corp. v. Siemens Power Generation, Inc.*, 463 F.3d 702, 706 (7th Cir. 2006); *Accent Packaging Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1329 (Fed. Cir. 2013)). Undisclosed portions of a product can be afforded trade secret protection. *Life Spine, Inc.* 8 F.4th at 540–42 (spinal implant's precise measurements are trade secrets because measurements were not discoverable through inspection, company prevented any third party from taking precise measurements, and patent did not disclose precise measurements). A trade secret could also exist in a combination of components, some of which are publicly available, so long as the unique combination has independent economic value. *Id.* at 540 (citing *3M v. Pribyl*, 259 F.3d 587, 595–96 (7th Cir. 2001).

Based on these principles, Rehlko has not shown that the competitive analyses are trade secrets. The comparisons at issue contain information about non-Rehlko products and Rehlko has no right or ability to keep *that* information secret. *UTStarcom, Inc.*, 675 F. Supp. 2d at 867–68. The first competitive analysis is exclusively about Generac's products. (ECF No. 9 at 16–17.) At the hearing, Rehlko's witness, Spearo, even acknowledged that the document was useful to Rehlko because it pointed out weaknesses in the Generac products that were available on Generac's public-facing website. That comparison is not a trade secret because it is based on information made publicly available by Generac, about a Generac product. Similarly, the information about competitors' products in the second and third comparisons, (ECF No. 9 at 114–21, 123–24), is also unprotected because it is not under Rehlko's control. *UTStarcom, Inc.*, 675 F. Supp. 2d at 867–68.

While a company *could* claim undisclosed information about its own product, contained in a competitive analysis, as a trade secret, it would need to identify what that information was, and why *it* specifically deserved protection. *See LifeSpine Inc.*, 8 F.4th at 541 ("We focus on the precise information that the plaintiff seeks to protect and ask if it qualifies as a trade secret under

the relevant statutory definition."). Rehlko has not done that here. Rehlko has not identified any metric related to its own product that is included in the comparison that would not be ascertainable by anyone who had access to a Rehlko generator. At the hearing, Spearo merely asserted that the sales team used this document to sell Rehlko products, and did not identify any information about Rehlko's product's performance that could not merely be observed by a purchaser. Rehlko has also not identified any measures it takes to maintain control of its generators after sale to prevent a party from measuring their performance. *See id.* at 540–42.

Because Rehlko cannot control its competitors' information and has not identified any of its own trade secrets in the comparative analyses, Rehlko has not shown that the comparison documents are likely to be trade secrets.

### D. Rehlko Has Not Shown That the Recordings Are Likely to Be Trade Secrets.

Rehlko argues that Mulè took recordings of various meetings, including "Town Hall" meetings, that were protected trade secrets. (Hearing Exhibit No. 26.) Again, Rehlko has failed to explain why the recordings have independent economic value; it has only argued that Rehlko took steps to keep them secret. Just because a party takes steps to keep information private is not enough to establish that the information is a protectable trade secret. Rehlko's witness, Spearo, testified at the evidentiary hearing that he could not open the recordings, and did not know their contents. Without knowing what they are or what they contain, and having no argument about why they have value, the Court cannot determine whether the recordings have independent economic value. *See* Wis. Stat. §139.40. The fact that Rehlko employees would face adverse consequences for sharing them may suggest that they have economic value, but that is not evidence sufficient to entitle Rehlko to injunctive relief. The Court again does not countenance or applaud Mulè's decision to take such materials with him when he left Rehlko's employment, but Rehlko has not explained why the recordings should be protected as trade secrets. Accordingly, it is not entitled to injunctive relief in relation to these documents.

### E. Rehlko Has Not Shown That the Power Point Presentations Are Likely to Be Trade Secrets.

Rehlko last asserts that several PowerPoints presentations taken by Mulè were trade secrets. Some of these power point presentations accompany continuing education presentations that Rehlko provided to engineers. (ECF No. 11 at 22–55, 65–118, 120–184.) Based on the statutory definition, Wis. Stat. §139.40(1)(c), these presentations are not trade secrets. As the

testimony confirmed, the entire point of creating this information and making it available to engineers is to familiarize them with Rehlko products and make them know more about Rehlko products than other products made by competitors. These presentations are thus intended to be shared. If they were kept secret, they would be useless. Similarly, the course descriptions of the continuing education presentations also cannot be economically valuable unless they are available to the people who could attend the continuing education presentations and then incorporate Rehlko products into their bids and designs. (ECF No. 11 at 59–61.) Rehlko has not shown that the PowerPoint Presentations are likely to be trade secrets.

## II.     Rehlko's Motion for a Permanent Injunction is Denied.

Rehlko's motion for a permanent injunction is premature, and the Court will deny it. A permanent injunction requires that a plaintiff show actual success on the merits, after a trial on the merits. The Court has only held an evidentiary hearing in support of the preliminary injunction. (ECF Nos. 23 at 4; 28; 29.) This was not a full trial on the merits and discovery is not complete. *Univ. of Tex. v. Camenish,* 451 U.S. 390, 396 (1981) ("[I]t is generally inappropriate for a federal court at the preliminary injunction stage to give a final judgment on the merits.") In its motion for a permanent injunction, Rehlko even references the further discovery it intends to take. (*See* ECF No. 30 at 10.)

Federal Rule of Civil Procedure 65(a)(2) provides a way to secure an expedited decision on the merits; courts may order the trial of the action on the merits to be consolidated with the preliminary injunction hearing. But the Court did not do that. And even when courts choose to exercise that option, there must typically be clear and unambiguous notice to the parties before the hearing commences, or at least early enough that the parties can be afforded a full opportunity to present their cases. *Camenish*, 451 U.S. at 395; *Pughsley v. 3750 Lake Shore Drive Co-op Bldg.*, 463 F.2d 1055, 1057 (7th Cir. 1972). That did not happen here. Rehlko has not shown actual success on the merits, and its motion for a permanent injunction is denied.

## CONCLUSION

Rehlko has not shown that it is entitled to injunctive relief because it has failed to show a likelihood that it will succeed on the merits of its Wisconsin Trade Secrets Act claims, and did not develop any of its other potential arguments for relief.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Permanent Injunction, ECF No. 30, is **DENIED.**

**IT IS FURTHER ORDERED** that the Temporary Restraining Order, ECF No. 25, is terminated.

**IT IS FURTHER ORDERED** that the parties shall file a joint status report by December 29, 2025, describing how they wish to proceed.

Dated at Milwaukee, Wisconsin on November 26, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge